UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | | |
|---|---|---|
| BRISTOUT BOURGUIGNON, | : | PRISONER |
| *Plaintiff,* | : | CIVIL NO: 3:03CV232(RNC) |
| | : | |
| v. | : | |
| | : | |
| LT. WILLIAM HERBERT, COMMISSIONER JOHN ARMSTRONG, WARDEN GEORGE WEZNER, LT. WILLIAM DELANEY, C.O. DANIEL BRUNSKI, C.O. WILLIAM BAKANAWSKI, | : | JUNE 25, 2004 |
| *Defendants*: | | |

# **DEFENDANT'S MEMORANDUM OF LAW IN SUPPORT OF THEIR MOTION TO DISMISS**

Pursuant to Rule 12(b)6) of the Federal Rules of Civil Procedure, the above named defendants respectfully submit this memorandum of law in support of their Motion to Dismiss the plaintiff's Amended Complaint.

The plaintiff brought this Title 42 U.S.C. Section 1983 action against the defendants alleging that they violated a variety of his federal constitutional and state law rights. The plaintiff has sued the defendants in both their individual and official capacity and is seeking money damages in the form of compensatory and punitive damages. The plaintiff's Complaint should be dismissed however, because not only has he failed to completely exhaust his administrative remedies prior to filing this federal action as required under the Prison Litigation Reform Act, but he has failed to state a claim upon which relief can be granted for a violation of his Due Process Rights, his First, or Fourteenth Amendment rights. In addition, he has not sufficiently alleged the personal involvement of John Armstrong or George Wezner in any alleged constitutional violation. Finally, the defendants are entitled to qualified immunity. Thus, the plaintiff's Amended Complaint should be dismissed, in whole or in part, and Judgment should be entered on behalf of one or more of the defendants.

## STANDARD OF REVIEW

When considering a Rule 12(b) motion to dismiss, the Court accepts as true all factual allegations in the complaint and draws inferences from these allegations in the light most favorable to the plaintiff. *See Scheuer v. Rhodes*, 416 U.S. 232, 236, 94 S.Ct. 1683, 1686, 40 L.Ed.2d 90 (1974); *Easton v. Sundram*, 947 F.2d 1011, 1014-15 (2d Cir. 1991), cert. denied, 504 U.S. 911, 112 S.Ct. 1943, 118 L.Ed.2d 548 (1992). The function of a motion to dismiss is "merely to assess the legal feasibility of the complaint, not to assay the weight of the evidence which might be offered in support thereof." *Younger v. Chernovetz*, 792 F. Supp. 173, 174, 779 (2d Cir. 1982) (*quoting Ryder Energy Distribution v. Merrill Lynch Commodities, Inc.*, 748 F.2d 774, 779 (2d Cir. 1984)). Dismissal is warranted only if, under any set of facts that the plaintiff can prove consistent with the allegations, it is clear that no relief can be granted. *See Hishon v. King & Spaulding*, 467 U.S. 69, 73, 104 S.Ct. 2229, 2232, 81 L.Ed.2d 59 (1984); *Frasier v. General Electric Co.*, 930 F.2d 1004, 1007 (2d Cir. 1991).

Where the plaintiff's [amended] complaint is "so confused, ambiguous, vague or otherwise unintelligible that its true substance, if any, is well disguised," it may safely be dismissed. *Salahuddin v. Cuomo*, 861 F.2d at 42. *See also, Flaherty v. Coughlin*, 781 F.2d 10, 13 (2d Cir. 1983) (Certain claims are so easily made and can precipitate such protracted proceedings with such disruption of governmental functions that ... detailed fact pleading is required to withstand a motion to dismiss); *Ostrer v. Aronwald*, 567 F.2d 551, 553 (2d Cir. 1977) (Complaints containing only conclusory, vague or general allegations of wrongdoing on the part of government officials will be dismissed). Thus, in practice, "a complaint must contain either direct or inferential allegations respecting all the material elements necessary to sustain a recovery under some viable legal theory." *Telectronics Proprietary, Ltd. v. Medtronics, Inc.*, 687 F.Supp. 832, 836 (S.D.N.Y. 1988) (citations omitted). A complaint which fails to do so is subject to dismissal for having failed to state a claim upon which relief can be granted.

I.   **THE PLAINTIFF'S AMENDED COMPLAINT IS BARRED BY THE PLRA, WHICH REQUIRES AN INMATE TO FIRST EXHAUST ALL OF HIS ADMINISTRATIVE REMEDIES PRIOR TO FILING A LAWSUIT IN FEDERAL COURT**

"The PLRA's exhaustion requirement applies to all inmate suits about prison life, whether they involve general circumstances or particular episodes, and whether they allege excessive force or some other wrong. " *Porter v. Nussle*, 534 U.S. _____ (2002).

"A prisoner is precluded from filing a Section 1983 action concerning prison conditions until such administrative remedies as are available have been exhausted." 42 U.S.C. § 1997e(a). *See, e.g., Nieves v. Palumbo*, Civ. No. 3:96CV1389 (DJS) (D. Conn. Dec. 18, 1997); *Brown v. Toombs*, No. 97-1333, 1998 WL 136185 (6th Cir. March 27, 1998) (Affirming district court's dismissal where prisoner plaintiff did not allege exhaustion); *White v. McGinnis*, No.96-2221, 1997 WL 757382, at *1 (6th Cir. Dec. 10, 1997) (affirming the district court's sua sponte dismissal without prejudice where inmate failed to exhaust administrative remedies before filing suit in district court); *Midgette v. Doe*, No. 96 Civ.6790(HB), 1997 WL 634280, at *1 (S.D.N.Y Oct. 15, 1997) (granting motion to dismiss when inmate failed to exhaust administrative procedures before filing suit.).

In *Nieves, supra*, the District Court took judicial notice of State of Connecticut Department of Correction Administrative Directive 9.6, entitled Inmate Grievances. Administrative Directive 9.6, Subsection 6 includes within the description of grievable matters: "Formal or informal reprisal for use of or participation in the Inmate Grievance Procedure" and "Any other matter relating to privileges, programs and services, conditions of care or supervision and living unit conditions within the authority of the Department of Correction."  Subsection 9 requires an inmate "to attempt to seek informal resolution prior to filing an inmate grievance"

including "personal contact with staff able to resolve the matter."

In this case, although the plaintiff attached a copy of his level one grievance to his original Complaint, he did not attach any decision demonstrating that he appealed the denial of that grievance or pursued it through all levels of appeal, which is required under the PLRA prior to filing suit in federal court. Indeed, the provisions of 42 U.S.C. § 1997e(a) are mandatory and requires complete exhaustion of all levels of available administrative review, including appellate review. *White v. McGinnis*, 131 F.3d 593, 595 (6th Cir. 1997); *Brown v. Toombs*, 139 F.3d 1102 (6th Cir.), *cert. denied* October 5, 1998, 1998 U.S. LEXIS 5073 (Under Prison Legal Reform Act, plaintiff inmate must attach to complaint the administrative decisions exhibiting exhaustion); *see also, Dodson v. Ohio Dep't of Rehabilitation and Corrections*, (N. D. Ohio 1999) 1999 U.S. Dist. LEXIS 4550, March 17, 1999; *Gibbs v. Bureau of Prison Office*, 986 F. Supp. 941, 942 (D. Md. 1997) (requiring exhaustion of administrative remedies necessary to bringing of medical claims); *see also, Beeson v. Fishkill Correctional Facility*, F. Supp.2d 884 (S.D.N.Y. 1998) (Holding that in order to bring claim for excessive force, plaintiff inmate must exhaust administrative remedies at correctional facility regardless of the relief sought by the plaintiff.).

Thus, because the plaintiff has not complied with the requirements of Section 1997e(a), his Amended Complaint should be dismissed in its entirety.

## II. THE PLAINTIFF'S CLAIMS AGAINST THE DEFENDANTS IN THEIR OFFICIAL CAPACITY ARE BARRED BY THE ELEVENTH AMENDMENT

It is well established law that the plaintiff's claims against the defendants in their official capacities are barred. Absent a waiver by the State, or valid Congressional override, the Eleventh Amendment bars a damage action against a state actor in federal court. *Kentucky v. Graham*, 413 U.S. 159, 169, 105 S.Ct. 3099, 3107 (1985); *Edelman v. Jordan*, 415 U.S. 651,

663, 94 S.Ct. 1347, 1355 - 1356 (1974); *Ford Motor Company v. Department of The Treasury of Indiana*, 323 U.S. 459, 464, 65 S.Ct. 347, 350 - 351 (1945). "[T]he Eleventh Amendment prohibits federal courts from entertaining suits by private parties against States and their agencies." *Alabama v. Pugh*, 438 U.S. 781, 98 S.Ct. 3057 (1978) (Per Curiam) (relief against State of Alabama and Alabama Board of Corrections overturned).

The Eleventh Amendment bar applies when a state or state officials are sued for damages in their official capacity. *Kentucky v. Graham*, 473 U.S. 159, 170, 105 S.Ct. 3099, 3107 (1985); *Cory v. White*, 457 U.S. 85, 90, 102 S.Ct. 2325, 2328 - 2329 (1982); *Edelman v. Jordan*, 415 U.S. 651, 663, 94 S.Ct. 1347, 1355 - 1356 (1974). Indeed, a cause of action under 42 U.S.C. §1983 requires that it be brought against a person; neither a state or a state agency is a person within the meaning of 42 U.S.C. § 1983, nor is a state official sued in his official capacity for money damages. *Will v. Michigan Dept. of State Police*, 491 U.S. 58, 70 - 71, 109 S.Ct. 2304, 2311 - 2312.  And even Section 1983 does not override a state's Eleventh Amendment immunity. *Quern v. Jordan*, 440 U.S. 332, 342 (1979).  Thus, those claims by the plaintiff against the defendants in their official capacity must be dismissed, as they are barred by the Eleventh Amendment.

**III.    THE PLAINTIFF HAS FAILED TO STATE A CLAIM AGAINST DEFENDANTS ARMSTRONG AND WEZNER, SINCE HE HAS NOT ALLEGED THEIR PERSONAL INVOLVEMENT IN  ANY ALLEGED CONSTITUTIONAL VIOLATION**

Notwithstanding the fact that the plaintiff has not yet fully exhausted his administrative remedies as required by the PLRA, his claims against Defendants Armstrong and Wezner should nevertheless be dismissed, since the plaintiff has not alleged that Commissioner Armstrong or Warden Wezner were personally involved in, or had any personal knowledge of, the incidents which allegedly violated his rights.  The fact that the plaintiff alleges that he wrote a letter to

these defendants to complain of his alleged rights violations is insufficient, given that the plaintiff did not notify them of the alleged violations, obviously, until *after* they had allegedly occurred, and not until after the plaintiff's disciplinary hearing appeal had been heard[1]. The allegations against Armstrong and Wezner are based merely upon the fact that they were, respectively, the Commissioner of the Department of Corrections and the Warden of the facility in which the plaintiff was housed at the time. This tenuous ground however is insufficient.

A review of the plaintiff's Amended Complaint reveals that he has not alleged any facts which demonstrate that Commissioner Armstrong or Warden Wezner were personally involved in the incidents alleged in his Complaint. Indeed, the absence of a single allegation that either of these defendants were personally involved, or even that they had personal knowledge about it as it was occurring, is grounds for dismissal. "[P]ersonal involvement of a defendant in an alleged constitutional deprivation is a prerequisite to an award of damages under Sec. 1983." *McKinnon v. Patterson*, 568 F.2d 930, 934 (2d Cir. 1977), *cert. denied*, 434 U.S. 1087 (1978). Supervisory officials, such as Commissioner Armstrong and Warden Wezner may be "personally involved" within the meaning of 42 U.S.C. Sec. 1983 only when their conduct is tantamount to actual participation in the alleged deprivation. *Williams v. Smith*, 781 F.2d 319, 323-24 (2d Cir. 1986). "A plaintiff must thus allege a tangible connection between the acts of a defendant and the injuries suffered." *Bass v. Jackson*, 790 F.2d 260, 263 (2d Cir. 1986).

Consistent with the requirement that personal involvement is required for a claim under §1983, the Supreme Court has ruled that the general doctrine of *respondeat superior* does not suffice to state a claim under §1983. *Monell v. New York City Dept. of Social Services*, 436 U.S. 658, 692-95(1978). Thus, in order to state a cognizable claim, the plaintiff must allege, and ultimately prove, "personal involvement of [the defendants] sufficient to support their

---

[1] See Plaintiff's original Complaint: attachment letter from Warden Wezner dated 1-3-03.

liability for wrongful acts," not merely their "linkage in the . . . chain of command." *Ayers v. Coughlin,* 780 F.2d 205, 210 (2d Cir. 1985).

Thus, supervisory responsibility alone is not enough to confer exposure to liability. *Williams v. Smith*, 781 F.2d 313, 323 (2d Cir. 1986); *Williams v. Vincent*, 508 F.2d 541, 546 (2d Cir. 1974). An official cannot be held liable merely because he or she occupies a high position in the agency hierarchy. *Colon v. Coughlin*, 58 F.3d 865, 874 (2d Cir. 1995). "A plaintiff must thus allege a tangible connection between the acts of the defendants and the injuries suffered." *Bass v. Jackson*, 790 F.2d 260, 263(2d Cir. 1986).

In this matter, the plaintiff has failed to allege any personal involvement by Defendant Armstrong or Wezner sufficient to confer liability upon them. His allegation that they are liable because they held a position of authority is inadequate. The plaintiff has failed to indicate with sufficient particularity any specific actions undertaken, or not, by either of these defendants to warrant the continuation of this complaint as to them. Therefore, the plaintiff's claims against Commissioner Armstrong and Warden Wezner should be dismissed.

**IV.     THE PLAINTIFF HAS FAILED TO STATE A CLAIM AGAINST THE DEFENDANTS FOR VIOLATION OF HIS RIGHTS UNDER THE FIRST AMENDMENT TO THE UNITED STATES CONSTITUTION.**

In order to properly establish a First Amendment claim, a plaintiff must allege that (1) he has an interest protected by the First Amendment, (2) that the statements he made were protected by the First Amendment, and (3) the defendant's actions chilled the exercise of those rights. *See Kerman v. City of New York,* 261 F.3d 229, 241-42 (2d Cir. 2001). A review of the pending Amended Complaint in light of this test establishes that the plaintiff has failed to state a claim upon which relief can be granted against any defendant in this case.

In order to allege a claim under the First Amendment, a plaintiff must first cross the threshold of having engaged in "speech" on a "matter of public concern" in order to establish that he has exercised an interest protected by the First Amendment. The Second Circuit has cautioned against a blind application of the "public concern" test, requiring instead an analysis of the speaker's motives in speaking, holding that, even if speech touches on a matter of public concern, it will not be protected if "the [individual's] motive for the speech is private and personal." *Blum v. Schlegel,* 18 F.3d 1005, 1012 (2d Cir. 1994). *See also, Texas v. Johnson*, 491 U.S. 397, 404 (1989) (the test is whether "[a]n intent to convey a particularized message was present, and [whether] the likelihood was great that the message would be understood by those who viewed it); *Lewis v. Cowen,* 165 F.3d 154, 163-64 (2d Cir. 1999) (… the court should focus on the motive of the speaker and attempt to determine whether the speech was calculated to redress personal grievances or whether it had a broader public purpose); *Morris v. Crow*, 142 F.3d 1379, 1381-82 (11th Cir. 1998) (Not only must the speech be related to matters of public interest, but the purpose of the expression must be to present such issues as matters of 'public' concern ….). Whether speech addresses a matter of public concern must be determined by the content, form, and context of a given statement. *Rankin v. McPherson,* 483 U.S. 378, 384-85 (1987). Here, there is no indication from the facts in the Amended Complaint that the plaintiff intended to convey any message whatsoever, either verbally or by his conduct. Thus, this claim should be dismissed.

Furthermore, the plaintiff has not stated a First Amendment violation because he has not pled sufficient facts to even raise a First Amendment issue. Nowhere is it alleged that any act on the part of one or more of the defendants was performed in an attempt to retaliate against the plaintiff for the exercise of his First Amendment constitutional rights. But, even if he had, not all speech is protected speech under the First Amendment. Nevertheless, the plaintiff's Amended

Complaint does not contain a single allegation that he was engaged in protected speech at any time during the course of his encounter with the defendants. Nor is it alleged that the plaintiff's speech was actually chilled in any way. Such allegations are necessary prerequisites to a First Amendment cause of action under § 1983. *See generally, Lowrance v. Achtyl*, 20 F.3d 529, 532-33 (2d Cir. 1984), *citing Sher v. Coughlin*, 739 F.2d 77, 82 (2d Cir. 1984).

Moreover, it is imperative that a plaintiff's pleading alleging a violation of his First Amendment rights be factual and not merely conclusory. *Frazier v. Dubois*, 922 F.2d 560, 562 (10th Cir. 1991). Absent sufficient factual allegations of wrongdoing on the part of one or more of the defendants, or sufficient factual allegations which support a First Amendment violation, the plaintiff has failed to state a claim upon which relief can be granted for violation of his rights under the First Amendment and therefore this claim should be dismissed as to all defendants.

V.    **THE PLAINTIFF HAS FAILED TO STATE A CLAIM FOR A VIOLATION OF HIS RIGHT TO DUE PROCESS UNDER THE FOURTEENTH AMENDMENT TO THE U.S. CONSTITUTION**

The Due Process Clause of the Fourteenth Amendment provides three different types of constitutional protections. It incorporates and makes applicable to the states specific protections embodied in the Bill of Rights; it guarantees a right to what has been termed "'substantive due process' which bars certain arbitrary government actions 'regardless of the fairness of the procedures used to implement them;'" and it provides a right to "procedural due process," in providing a constitutionally-required minimum of procedural safeguards in connection with a deprivation of life, liberty or property by the State. *Daniels v. Williams,* 474 U.S. 327, 337, 106 S.Ct. 662, 667, 88 L.Ed.2d 662 (1986) (Stevens, J., concurring); *see also, Temkin v. Frederick*

9

*County Commissioners,* 945 F.2d 716, 720 n.4 (4th Cir. 1991), *cert. denied,* 502 U.S.1095, 112 S.Ct. 1172, 117 L.Ed.2d 417 (1992).

The plaintiff's Amended Complaint contains an allegation that the newly added defendants Brito, Worth and Herbert, violated his right to procedural due process in violation of the Fourteenth Amendment by allegedly denying him the opportunity to call witnesses or present evidence at his disciplinary hearing on December 18, 2002. As set forth herein however, the law is clear that based upon the allegations in the plaintiff's Amended Complaint, he has not stated a claim upon which relief can be granted for a violation of his procedural right to due process. Therefore, this claim should be dismissed.

**A.   Procedural Due Process**

Pursuant to the Due Process Clauses of the Fifth and Fourteenth Amendments, neither the states nor the federal government may deprive an individual of property or liberty without due process.  In order to state a valid procedural due process claim, the plaintiff must at least allege: (1) that he had a property interest; (2) of which the defendants deprived them; (3) without due process of law.  *Weinstein v. Albright,* 261 F.3d 127, 134 (2nd Cir. 2001); *Sylvia Dev. Corp. v. Calvert County*, 48 F.3d 810, 826 (4th Cir. 1995).  However, it is well settled that the Fourteenth Amendment itself does not create property interests.  "Rather, they are created and their dimensions are defined by existing rules or understandings that stem from an independent source such as state law."  *Board of Regents v. Roth*, 408 U.S. 564, 577, 33 L.Ed.2d 548, 92 S.Ct. 2701 (1972).  Further, to have a property interest in a benefit, a person must have a "legitimate claim of entitlement to it."  *Id.*  A mere "abstract need or desire for it" or "a unilateral expectation of it" is insufficient.  *Id.*

Due process of law generally requires that a deprivation of property "be preceded by notice and opportunity for hearing appropriate to the nature of the case." *Mullane v. Central*

*Hanover Bank & Trust Co.*, 339 U.S. 306, 313, 94 L.Ed. 865, 70 S.Ct. 652 (1950). *See also, Cleveland Board of Education v. Loudermill*, 470 U.S. 532, 542, 84 L.Ed.2d 494, 105 S.Ct. 1487 (1985). However, "to determine whether a procedural due process violation has occurred, courts must consult the entire panoply of pre-deprivation and post-deprivation process provided by the state. *Fields v. Durham,* 909 F.2d 94 (4th Cir. 1990), *cert. denied,* 498 U.S. 1068, 112 L.Ed.2d 849, 111 S.Ct. 786 (1991), *citing Zinermon v. Burch*, 494 U.S. 113, 126, 108 L.Ed.2d 100, 110 S.Ct. 975 (1990). A "due process violation actionable under §1983 is not complete when the deprivation occurs; it is not complete unless and until the State fails to provide due process." *Fields*, 909 F.2d at 98 (quoting *Zinermon*, 494 U.S. at 126).

Since the plaintiff's claim is one of a denial of *procedural* due process, the Due Process Clause of the Fourteenth Amendment usually requires a pre-deprivation hearing when the loss of property or liberty results from established state procedures. *Logan v. Zimmerman Brush Co.,* 455 U.S. 422, 71 L.Ed.2d 265, 102 S.Ct. 1148 (1982). But, a pre-deprivation process cannot reasonably be required where loss results from a random, unauthorized act of an employee who is a state actor. *Parratt v. Taylor,* 451 U.S. 527, 68 L.Ed.2d 420, 101 S.Ct. 1908 (1981), *overruled on other grounds, Daniels v. Williams,* 474 U.S. 327, 88 L.Ed.2d 662, 106 S.Ct. 662 (1986); *Hudson v. Palmer,* 468 U.S. 517, 533, 104 S.Ct. 3194, 82 L.Ed.2d 393 (1984). In such an event, due process is satisfied by the availability of adequate post-deprivation remedies. *Id.* at 541. The analysis thus turns on whether the alleged deprivation is foreseeable and will occur at a predictable point, such that pre-deprivation safeguards would be of use in preventing the kind of deprivation alleged. *Zinermon v. Burch, supra.*

In this case, the plaintiff was provided with a disciplinary hearing within the required time period as set forth in the Department of Correction Administrative Directives. He was present at that hearing and was permitted to present evidence in support of his claims. The fact

that he was not permited to call witnesses as he alleged, did not violate his right to due process. As noted in the statement of the reason for the denial of the plaintiff's grievance, there was no evidence which supported his claims. Rather, the evidence proved that no such assault occurred, especially given that the plaintiff refused to let himself be examined by medical staff immediately after the alleged assault, and when he did consent to a physical examination over ten days later, there were no injuries consistent with his claims.

In addition, the plaintiff did not appeal either the imposition of the discplinary ticket or the denial of his grievence, thus waiving right to file this action in federal court. Accordingly, for all of the reasons set forth herein, the plaintiff's claim that his procedural Due Process rights under the Fourteenth Amendment was violated is without merit and must be dismissed.

### VI.    THE PLAINTIFF'S EMOTIONAL DISTRESS CLAIM IS MERITLESS

It is well settled that in order to state a claim of intentional infliction of emotional distress, "[i]t must be shown: (1) that the actor intended to inflict emotional distress or that he knew or should have known that emotional distress was the likely result of his conduct; (2) that the conduct was extreme and outrageous; (3) that the defendant's conduct was the cause of the plaintiff's distress; and (4) that the emotional distress sustained by the plaintiff was severe." *Petyan v. Ellis,* 200 Conn. 243, 253, 510 A.2d 1337 (1986) (Internal quotation marks omitted). Whether the conduct of the defendants and the plaintiff's resulting distress are sufficient to satisfy each of these elements is a question, in the first instance, for this Court. Only if reasonable minds could differ, does the question become an issue for the jury to decide. *Id.* (quoting *Mellaly v. Eastman Kodak Company*, 42 Conn. Sup. 17, 18, 597 A.2d 807 (1991).

Extreme and outrageous conduct is an essential element in the tort of intentional infliction of emotional distress. Mere insults, indignities, or annoyances that are not extreme and

outrageous will not suffice. *Biro v. Hirsch,* Docket No. CV0314442S, 1998 WL 59499 (Conn. Super. 1998), slip op. at 6 (citations omitted). Liability for intentional infliction of emotional distress requires conduct exceeding all bounds usually tolerated by decent society, of a nature which is especially calculated to cause, and does cause, mental distress of a very *serious* kind. *DeLaurentis v. New Haven,* 220 Conn. 225, 267, 597 A.2d 807 (1991).

One Connecticut Superior Court decision provided a useful analysis of cases from Connecticut and other jurisdictions which employ the same standard:

> . . . For the tort of intentional infliction of emotional distress to be established, . . . the plaintiff must allege and prove conduct considerably more egregious than that experienced in the rough and tumble of life .... Liability exists only for conduct exceeding all bounds usually tolerated by decent society, of a nature which is especially calculated to cause, and does cause mental distress of a very serious kind. [A] line can be drawn between the slight hurts which are the price of a complex society and the severe mental disturbances inflicted by intentional actions wholly lacking in social utility. Liability has been found only where the conduct has been so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community.
>
> Some courts called upon to determine whether there is a reason to let a jury decide whether alleged conduct could be found to meet "outrageous" standard have focused on objective criteria such as whether the defendant knew of some special susceptibility to emotional abuse on the part of the plaintiff. Some cases have looked to whether there is a lengthy or continuous pattern of harassment conduct over time. Single incidents, even if false accusations, are almost never found by courts to be outrageous. In *Whelan v. Whelan,* 41 Conn. Sup. 519 (1991), what may have been a single incident, was held sufficient to show outrageousness, but that case involved a falsehood designed to instill a fear of death.

*Lucas v. Firine,* No. CV 92-0335703, 1993 Conn. Super. LEXIS 1777 (1993). The *Whelan* case cited above is clearly distinguishable from the facts in this case. This case does not fall into any

fact pattern or category which could be deemed outrageous, as the actions here, even if later deemed to have been excessive, (which they were not), did not go "beyond all possible bounds of decency", as the use of some force was necessary to gain control of the plaintiff. Indeed, accepting as it must, the plaintiff's allegations as true for the purposes of this motion to dismiss, the behavior of defendants Armstrong, Wezner, Brito, Worth and Herbert, was not "so outrageous in character, and so extreme in degree . . . to be regarded as atrocious, and utterly intolerable in a civilized community." *Id*.

Thus, given that the conduct, if any, of defendants Armstrong, Wezner, Brito, Worth and Herbert, was not so extreme or outrageous, the plaintiff has failed to state a claim for severe emotional distress. *Brown v. Ellis,* 40 Conn. Sup. 165, 168, 484 A.2d 944 (1984), *citing,* Restatement (Second) of Torts § 46, comment g. This claim should be dismissed too.

## VII.  THE DEFENDANTS ARE ENTITLED TO QUALIFIED IMMUNITY

In the simplest terms, the defendants are entitled to qualified immunity, and thus judgment in their favor on all of plaintiff's claims, because all of their actions, if any, were reasonable and not in violation of the plaintiff's constitutional rights. This established axiom of constitutional jurisprudence applies with equal force to the allegations in plaintiff's Amended Complaint based upon federal law as well as those founded upon state law.

The shield of qualified immunity generally protects government officials from liability for damages on account of their performance of discretionary official functions "insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald*, 457 U.S. 800, 818, 102 S.Ct. 2727, 2738, 73 L.Ed.2d 396 (1982); *O'Hagan v. Soto*, 725 F.2d 878, 879 (2d Cir. 1984). As a general rule, correctional officials are entitled to qualified immunity if: (1) their conduct does not violate

clearly established constitutional rights, or (2) it was objectively reasonable for them to believe their acts did not violate those rights. *Oliviera v. Mayer*, 23 F.3d 642, 648 2d Cir. (1994). Immunity ordinarily should be decided by the court. Id. 23 F.3d at 649; *quoting Hunter v. Bryant*, 502 U.S. 224, 112 S.Ct. 534, 537, 116 L.Ed.2d 589 (1991). To determine whether a particular right was clearly established at the time defendant acted, a court should consider; whether (1) the right in question was defined with "reasonable specificity"; (2) the decisional law of the Supreme Court and the applicable circuit court support the existence of the right in question, and (3) under preexisting law, a reasonable defendant official would have understood that his or her acts were unlawful. *Jermosen v. Smith*, 945 F.2d 547, 550 (2d Cir. 1991), cert. denied, 503 U.S. 961, 112 S.Ct. 1565, 118 L.Ed.2d 211 (1992).

Here, the plaintiff was issued a disciplinary ticket after he refused the commands of several correctional officials and force was utilized when he attempted to flee. After he was subdued, he was taken to the medical department for examination, but refused to let himself be examined. Hhe was examined approximately one week later and he did not have any injuries which supported his allegations of assault. The plaintiff was then afforded a hearing with regard to the discipline he received for his conduct. He was given the opportunity to appeal that decision, as well as the denial of his grievance.

Because the actions, or non-actions of defendants Armstrong, Wezner, Brito, Worth and Herbert were reasonable under the circumstances, they are entitled to qualified immunity and are thus immune from suit. *Golino v. City of New Haven*, 950 F.2d 864, 870 (2nd Cir. 1991); *Baker v. McCollan*, 443 U.S. 146, 99 S.Ct. 2089, 2695 (1979).

**VIII.     SUPPLEMENTAL STATE LAW CLAIM**

For all of the foregoing reasons, the plaintiffs' federal claims pursuant to 42 U.S.C. § 1983 should be dismissed as a matter of law, in whole or in part, as should the supplemental state law claims. In the event this Court does not dismiss the pendent state law claims on the merits, it should dismiss the claims for a lack of jurisdiction. *United Mine Workers of America v. Gibbs*, 383 U.S. 715, 86 S.Ct. 1130, 1139, 16 L.Ed. 218 (1966).

**CONCLUSION**

For the foregoing reasons, the defendants respectfully request that this Court grant their Motion to Dismiss, in whole or in part, on the grounds that the plaintiff has failed to state a claim upon which relief can be granted, or in the alternative, on the grounds of qualified immunity.

DEFENDANTS
BRITO, ARMSTRONG, WEZNER, DELANEY, BRUNSKI, BAKANOWKI, WORTH AND HERBERT

RICHARD BLUMENTHAL
ATTORNEY GENERAL

\_\_/s/_____
Robert B. Fiske, III
Assistant Attorney General
110 Sherman Street
Hartford, CT 06105
(860) 808-5450
e-mail: robert.fiske@po.state.ct.us

## CERTIFICATION

I hereby certify that the following Memorandum of Law was mailed to the following, this, the 25th day of June, 2004, to:

Inmate Bristout Bourguignon, #265860
Osborn C.I.
P.O. Box 100
335 Bilton Road
Somers, CT 06071

\_\_/s/_____
Robert B. Fiske, III
Assistant Attorney General